IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ABERHAM SHIELDS,

      Plaintiff,

vs.                                          No. CIV 97-893 MV/WWD

VALMET, INC.; ALLEN-BRADLEY
COMPANY, INC.; and RECYCLING SYSTEMS
CORPORATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Recycling Systems Corporation's Motion for Summary Judgment, filed November 13, 1997 **[Doc. No. 26]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed finds that the motion is well taken and will be **granted**.

### Background

The factual record before the Court is scant. Mr. Shields sustained serious injury to his arm and torso when his arm was pulled into the "calendar stack" of the paper machine at his employer's McKinley Paper Company mill in Prewitt, New Mexico on June 2, 1994. At the time Mr. Shields was a winder operator at the mill, and according to his state court complaint, was asked by Defendant Valmet and others to manually feed paper through the calendar stack. Mr. Shields suffered significant harm when his left arm was pulled into the calendar stack by the calendar rolls so that his left upper

extremity past his shoulder was caught in the stack for nearly an hour.  The McKinley mill was built in part through the efforts of all three defendants.

Procedurally, this case has proceeded apace.  Valmet properly removed the action, with the joinder of Defendants Allen-Bradley and Recycling Systems, to this Court on July 2, 1997.  The Court issued an initial scheduling order on August 8, 1997, and the parties filed a provisional discovery plan on September 9, 1997.  With discovery set to run until February 9, 1998, later extended to March 23, 1998, Recycling Systems filed their motion for summary judgment on November 13, 1997.  The Court dismissed Defendants Valmet and Allen-Bradley with prejudice on April 3, 1998 in response to a joint motion of the parties.

Mr. Shields makes but two references to Recycling Systems in his complaint.  He first states that Recycling Systems had duties and responsibilities concerning the engineering, installation and operation of the paper machinery at the McKinley plant.  Then, Mr. Shields asserts that Recycling Systems' negligence proximately caused his injury in that it failed to engineer, install, and oversee the operation of the paper machinery that caused his injuries.

Against these contentions, in its motion and supporting memorandum Recycling Systems claims that it did not, nor had any responsibility or duty to, engineer, install, operate, or oversee the operation of the paper machinery that caused Mr. Shield's injury.  Recycling Systems also states that its relationship with McKinley terminated over three months before Mr. Shields' injuries, on February 22, 1994, and that consequently it had nothing to do with the operation of the machinery that injured Mr. Shields on June 2nd.  In support of this claim Recycling Systems offers the affidavits of Jeffrey Leonard Murphy, one of two Recycling Systems employees who had the primary responsibility of fulfilling Recycling Systems' contractual obligations to McKinley, and the contracts themselves.

2

Recycling Systems entered into three agreements with McKinley, a Service Agreement, a Management Agreement, and a Marketing Agreement, all executed on October 1, 1992.  Recycling Systems has provided the Court, under seal, copies of these agreements.  The Service Agreement called on Recycling Systems to provide construction management services.  The scope of those services encompassed planning, managing, supervising, and causing to occur the construction of the McKinley mill, including supervising engineers, preparing a construction budget, schedule, and time table, supervising and directing of all construction work, assuming the primary responsibility for all construction methods, arranging the provision of all labor and equipment, subject to a $100,000 spending cap, and assisting in the final selection of vendors and the installation of machinery.  With respect to the mill equipment, Recycling Systems under the contract was to "arrange for the purchase, installation, testing and start-up of production equipment and machinery for the mill specified in the construction plan," but its scope of authority also was limited to a $100,000 ceiling.

In the Management Agreement, Recycling Systems was to have comprehensive control of the day-to-day activities at the mill from its pre-commission period and continuing through its start-up and operating periods.  Recycling Systems agreed to direct the activities of the mill manager and be responsible for all aspects of the operation and management of the mill.  Included in those duties were the recruitment and training of all mill personnel, the development of a plan to assure utilities and raw materials for the mill, and the operation of the mill in strict compliance with all occupational health and safety laws.

Lastly, in the Marketing Agreement, Recycling Systems agreed to be responsible for all aspects of marketing the products of the mill, including developing and implementing a marketing plan and incurring all costs of providing marketing services.  All three agreements between McKinley

3

and Recycling Systems terminated on February 22, 1994 by mutual agreement of the parties.

In his response to the motion, Mr. Shields presents two arguments. First, he states that Recycling Systems did have duties and responsibilities for the design, installation, and operation of the paper machine. Second, Mr. Shields explains that under Rule 56(f) the Court should deny the motion, or at the very least delay a ruling, because discovery at the time Recycling Systems moved for summary judgment was still in its early stages.

Although he has presented no affidavits or deposition testimony to support his claims, from a reading of the agreements between McKinley and Recycling Systems Mr. Shields disputes whether Recycling Systems had no duty to design, install, or operate paper machinery at the McKinley mill. In addition, without yet having seen the actual documents, Mr. Shields states that the Court can draw inferences from the titles of certain memoranda exchanged during the planning and construction of the mill. These inferences, according to Mr. Shields, should lead the Court to conclude that there are genuine issues of material fact regarding Recycling Systems' design, installation, or operation of the paper machinery.

Mr. Shields also invokes Rule 56(f) of the Federal Rules of Civil Procedure for the proposition that the Court has discretion to deny or delay a ruling on this motion pending further discovery. Mr. Shields' attorney has filed an affidavit with the response, explaining that he had, at the time of the filing, not yet had the opportunity to conduct necessary discovery, and that as a consequence could not provide meaningful information to the Court in opposition to the summary judgment motion. Mr. Shields' counsel implies that with further discovery, he will pose interrogatories, depose Recycling System employees and contractors, and retain expert witnesses to analyze the machinery that harmed Mr. Shields.

4

**Discussion**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." Allen v. Muskogee, Oklahoma, 119 F.3d 837, 840 (10th Cir. 1997), cert. denied, 118 S.Ct. 1165 (1998), citing Celotex v. Catrett, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, Allen, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law, id. at 839, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. Allen, 119 F.3d at 841, citing Celotex, 477 U.S. at 324.

Here, Recycling Systems has met its burden of showing that there is an absence of evidence to support Mr. Shields' case. Recycling Systems, through the affidavits of Mr. Murphy, has explained that it had no duty to, nor did it design, build, or operate the paper machinery at the McKinley plant. Rather, as Mr. Murphy states, Recycling Systems was the project manager for the construction of the whole plant and coordinated the various trades involved in the construction, but did not have any responsibility for and did not control the installation of the paper machinery.

Mr. Shields in response points to the contracts between McKinley and Recycling Systems as evidence that a duty did exist.   The relevant contracts are the Service Agreement and the Management Agreement.   Under the Service Agreement, McKinley hired Recycling Systems to perform "construction management services" where Recycling Systems was to "plan, manage, supervise, and cause to occur the construction of the [paper] mill."   These are broad words that could support either Mr. Murphy's or Mr. Shields' contentions.   Yet the agreement restricts Recycling Systems to only assisting in the selection of equipment vendors, and only assisting in the installation of machinery which McKinley selected.   Moreover, Recycling Systems' scope of authority in the Service Agreement is limited to purchases for materials, utilities and construction machinery where the machinery cost does not exceed $100,000 or a contract for service does not run longer than 90 days.   Finally, subject to a $100,000 ceiling, Recycling Systems was only to arrange for the purchase, installation, and testing of production machinery as specified in the construction plans.   There is no indication from the agreement that Recycling Systems chose the mill's production equipment.   On balance, therefore, in reading the Service Agreement and Mr. Murphy's affidavit the Court finds that Mr. Shields has failed to show, beyond mere allegations, a genuine factual issue based on the Service Agreement and Recycling System's performance under that agreement as to Recycling Systems' duty toward him.

The Management Agreement, however, does on its face display the possibility of a duty on the part of Recycling Systems toward McKinley employees and Mr. Shields.   This contract, whereby Recycling Systems agrees to direct the activities of the manager of the mill and be responsible for all aspects of the operation and management of the mill, including the recruiting and training of all mill personnel, shows that Recycling Systems, on paper at least, was to have an active involvement in the

6

pre-commissioning, start-up, and operating phases of the mill and its paper machinery.  Moreover, Recycling Systems is expressly responsible under the agreement for operating the mill in strict compliance with all laws and regulations, including safety regulations.

Yet Mr. Murphy categorically states that, because the parties terminated all agreements prior to the mill's beginning operation, Recycling Systems' obligations under the Management Agreement never arose.  Mr. Murphy explains that Recycling Systems did not direct the mill manager's activities, operate or manage the mill, or recruit or train mill personnel.  Against this affidavit, Mr. Shields has not offered other than allegations to the contrary, and thus has not met his burden to show a genuine issue of fact as to the actual existence, based on the Management Agreement, of Recycling System's duty toward him.  See Fed. R. Civ. P. 56(e).

Lastly, Mr. Shields asks the Court to draw reasonable inferences from the titles of documents that he has not seen but that are addressed to alleged Recycling Systems employees or agents Thomas Wong and Phil Hammack.  Some document titles include: "drive proposal--fan pump for No. 1 paper machine," "winder ac sectional drive proposal," and "control of motor blower starters."  Recycling Systems explains that Mr. Wong and Mr. Hammack were neither its employees nor agents, but were independent contractors hired to take care of the computer control and electric systems.  Viewing evidence in the light most favorable to Mr. Shields, as the Court must, the Court can not reasonably infer, on the basis of these allegations, that Recycling Systems owed a duty to Mr. Shields.  Mr. Shields simply can not rest on the mere allegations in his pleadings.  Celotex, 477 U.S. at 324.

Even if the Court were to construe a duty on the part of Recycling Systems in this instance, the Court would be compelled to grant summary judgment on the basis of the material before it.  To survive a summary judgment motion, a nonmovant must show a genuine issue of material fact on each

and every element "essential to his case on which he bears the burden of proof at trial." Treff v. Galetka, 74 F.3d 191, 195 (10th Cir. 1996), citing Celotex, 477 U.S. at 322. Mr. Shields therefore needs to do more than argue duty. He must also point to breach and causation. Although Mr. Shields need not prove his case for purposes of this motion, Morgan v. Hilti, Inc., 108 F.3d 1319, 1321-22 (10th Cir. 1997), Mr. Shields' pleadings are devoid of any breach and causation allegations. Thus, pursuant to Treff, the Court would grant summary judgment based on these pleadings.

Most troubling to the Court in this case is Mr. Shields' Rule 56(f) argument urging a denial of Recycling Systems' motion or in the alternative a delay in ruling to allow him to complete discovery. Mr. Shields is quite right that this motion is premature, for ordinarily a summary judgment motion is appropriate only after adequate time for discovery. See Allen, 119 F.3d at 841, citing Celotex, 477 U.S. at 322. In other circumstances, then, the Court would strongly hesitate before ruling on a motion presented while discovery still had four months to run. Moreover, Mr. Shields' attorney has complied with his obligation to file an affidavit from which the Court can glean that additional time from the November 13th filing of the motion would allow him to conduct discovery with the aim of showing a genuine issue of material fact. Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986).

However in this case Mr. Shields, although discovery closed on March 23rd and the motion deadline passed on April 16th, has not supplemented his response to the summary judgment motion. In asserting that more time would allow him to succeed in rebutting Recycling System's motion, Mr. Shields assumed a responsibility to put before the Court additional material that would help his case and allow the Court, once that time had passed, to consider the motion. As it now stands, the Court has delayed ruling on the motion and essentially granted Mr. Shields' request for more time. The

8

Court has no indication that this additional time has been beneficial, however, and with trial set only a few weeks hence, the Court now must rule.

_____

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

May 11, 1998

Counsel for Plaintiff

Jeanne Marie Smith
505 Marquette, NW #1717
Albuquerque, NM 87102
(505) 243-3222

Counsel for Defendant

Rudolph A. Lucero , Esq.
Miller, Stratvert, Torgerson & Schlenker
PO Box 25687
Albuquerque, NM 87125
(505) 842-1950
Fax: 243-4408